NATALIE WEINTRAUB, PLAINTIFF-RESPONDENT, v. DONALD P. KROBATSCH AND ESTELLA KROBATSCH, DEFENDANTS-APPELLANTS, AND THE SERAFIN AGENCY, INC., DEFENDANT-RESPONDENT.

Argued November 20, 1973—Decided March 19, 1974.

*Mr. Charles J. Farley, Jr.* argued the cause for the defendants-appellants (*Messrs. Farley & Farley,* attorneys).

*Mr. Dean A. Gaver* argued the cause for the plaintiff-respondent (*Messrs. Hannoch, Weisman, Stern & Besser,* attorneys).

*Mr. Roger K. Bentley, II* argued the cause for the defendant-respondent (*Messrs. Zlotkin & Bentley,* attorneys).

The opinion of the Court was delivered by

JACOBS, J. The judgment entered in the Law Division, as modified in an unreported opinion of the Appellate Division, directed that the appellants Donald P. Krobatsch and Estella Krobatsch, his wife, pay the sum of $4,250 to the plaintiff Natalie Weintraub and the sum of $2,550 to the defendant The Serafin Agency, Inc. We granted certification on the application of the appellants. 63 *N. J.* 498 (1973).

The procedural steps below need not be dealt with at this point, other than to note that oral testimony was never taken and the matter was disposed of by summary judgment on the basis of meagre pleadings and conclusory affidavits. For present purposes we must resolve doubts in favor of the appellants and must accept their factual allegations, along with the inferences most favorable to them. See *Ruvolo v.*

*American Cas. Co.,* 39 *N. J.* 490, 499 (1963); *Frank Rizzo, Inc. v. Alatsas,* 27 *N. J.* 400, 405 (1958); *Heuter v. Coastal Air Lines, Inc.,* 12 *N. J. Super.* 490, 495 (*App. Div.* 1951). On that approach the following appears:

Mrs. Weintraub owned and occupied a six-year-old Englishtown home which she placed in the hands of a real estate broker (The Serafin Agency, Inc.) for sale. The Krobatsches were interested in purchasing the home, examined it while it was illuminated and found it suitable. On June 30, 1971 Mrs. Weintraub, as seller, and the Krobatsches, as purchasers, entered into a contract for the sale of the property for $42,500. The contract provided that the purchasers had inspected the property and were fully satisfied with its physical condition, that no representations had been made and that no responsibility was assumed by the seller as to the present or future condition of the premises. A deposit of $4,250 was sent by the purchasers to the broker to be held in escrow pending the closing of the transaction. The purchasers requested that the seller have the house fumigated and that was done. A fire after the signing of the contract caused damage but the purchasers indicated readiness that there be adjustment at closing.

During the evening of August 25, 1971, prior to closing, the purchasers entered the house, then unoccupied, and as they turned the lights on they were, as described in their petition for certification, "astonished to see roaches literally running in all directions, up the walls, drapes, etc." On the following day their attorney wrote a letter to Mrs. Weintraub, care of her New York law firm, advising that on the previous day "it was discovered that the house is infested with vermin despite the fact that an exterminator has only recently serviced the house" and asserting that "the presence of vermin in such great quantities, particularly after the exterminator was done, rendered the house as unfit for human habitation at this time and therefore, the contract is rescinded." On September 2, 1971 an exterminator wrote to Mr. Krobatsch advising that he had examined the premises

and that "cockroaches were found to have infested the entire house." He said he could eliminate them for a relatively modest charge by two treatments with a twenty-one day interval but that it would be necessary to remove the carpeting "to properly treat all the infested areas."

Mrs. Weintraub rejected the rescission by the purchasers and filed an action in the Law Division joining them and the broker as defendants. Though she originally sought specific performance she later confined her claim to damages in the sum of $4,250, representing the deposit held in escrow by the broker. The broker filed an answer and counterclaim seeking payment of its commission in the sum of $2,550. There were opposing motions for summary judgment by the purchasers and Mrs. Weintraub, along with a motion for summary judgment by the broker for its commission. At the argument on the motions it was evident that the purchasers were claiming fraudulent concealment or nondisclosure by the seller as the basis for their rescission. Thus at one point their attorney said: "Your honor, I would point out, and it is in my clients' affidavit, every time that they inspected this house prior to this time every light in the place was illuminated. Now, these insects are nocturnal by nature and that is not a point I think I have to prove through someone. I think Webster's dictionary is sufficient. By keeping the lights on it keeps them out of sight. These sellers had to know they had this problem. You could not live in a house this infested without knowing about it."

The Law Division denied the motion by the purchasers for summary judgment but granted Mrs. Weintraub's motion and directed that the purchasers pay her the sum of $4,250. It further directed that the deposit monies held in escrow by the broker be paid to Mrs. Weintraub in satisfaction of her judgment against the purchasers. See *Oliver v. Lawson,* 92 *N. J. Super.* 331, 333 (*App. Div.* 1966), *certif. denied,* 48 *N. J.* 574 (1967). It denied the broker's summary judgment motion for its commission but held that matter for trial. On

appeal, the Appellate Division sustained the summary judgment in Mrs. Weintraub's favor but disagreed with the Law Division's holding that the broker's claim must await trial. It considered that since the purchasers were summarily held to have been in default in rescinding rather than in proceeding with the closing, they were responsible for the commission. See *Ellsworth Dobbs, Inc. v. Johnson,* 50 *N. J.* 528, 558–62 (1967). Accordingly, it modified the Law Division's judgment to the end that the purchasers were directed to pay not only the sum of $4,250 to Mrs. Weintraub but also the sum of $2,550 to the broker.

Before us the purchasers contend that they were entitled to a trial on the issue of whether there was fraudulent concealment or nondisclosure entitling them to rescind; if there was then clearly they were under no liability to either the seller or the broker and would be entitled to the return of their deposit held by the broker in escrow. See *Keen v. James,* 39 *N. J. Eq.* 527, 540 (E. & A. 1885), where Justice Dixon, speaking for the then Court of last resort, pointed out that "silence may be fraudulent" and that relief may be granted to one contractual party where the other suppresses facts which he, " 'under the circumstances, is bound in conscience and duty to disclose to the other party, and in respect to which he cannot, innocently, be silent.' " 39 *N. J. Eq.* at 540–41. See also *Grossman Furniture Co. v. Pierre,* 119 *N. J. Super.* 411, 420 (*Essex Co. Ct.* 1972); *Heuter v. Coastal Air Lines, Inc., supra,* 12 *N. J. Super.* at 495–97; 12 *Williston, Contracts* § 1498 (3d ed. 1970); *Prosser, Torts* 695–99 (*4th ed.* 1971); Keeton, "Fraud — Concealment and Non-Disclosure," 15 *Tex. L. Rev.* 1 (1936); Goldfarb, "Fraud and Nondisclosure in the Vendor-Purchaser Relation," 8 *Wes. Res. L. Rev.* 5 (1956).

Mrs. Weintraub asserts that she was unaware of the infestation and the Krobatsches acknowledge that, if that was so, then there was no fraudulent concealment or nondisclosure on her part and their claim must fall. But the purchasers allege that she was in fact aware of the infestation and at

this stage of the proceedings we must assume that to be true. She contends, however, that even if she were fully aware she would have been under no duty to speak and that consequently no complaint by the purchasers may legally be grounded on her silence. She relies primarily on cases such as *Swinton v. Whitinsville Sav. Bank,* 311 *Mass.* 677, 42 *N. E.* 2d 808, 141 *A. L. R.* 965 (1942), and *Taylor v. Heisinger,* 39 *Misc.* 2d 955, 242 *N. Y. S.* 2d 281 (*Sup. Ct.* 1963). *Taylor* is not really pertinent since there the court found that the seller had "no demonstrated nor inferable knowledge of the condition complained of." 242 *N. Y. S.* 2d at 286. *Swinton* is pertinent but, as Dean Prosser has noted (*Prosser, supra* at 696), it is one of a line of "singularly unappetizing cases" which are surely out of tune with our times.

In *Swinton* the plaintiff purchased a house from the defendant and after he occupied it he found it to be infested with termites. The defendant had made no verbal or written representations but the plaintiff, asserting that the defendant knew of the termites and was under a duty to speak, filed a complaint for damages grounded on fraudulent concealment. The Supreme Judicial Court of Massachusetts sustained a demurrer to the complaint and entered judgment for the defendant. In the course of its opinion the court acknowledged that "the plaintiff possesses a certain appeal to the moral sense" but concluded that the law has not "reached the point of imposing upon the frailties of human nature a standard so idealistic as this." 42 *N. E.* 2d at 808–809. That was written several decades ago and we are far from certain that it represents views held by the current members of the Massachusetts court. See *Kannavos v. Annino,* 356 *Mass.* 42, 247 *N. E.* 2d 708, 711 (1969). In any event we are certain that it does not represent our sense of justice or fair dealing and it has understandably been rejected in persuasive opinions elsewhere. See *Obde v. Schlemeyer,* 56 *Wash.* 2d 449, 353 *P.* 2d 672 (1960); *Loghry v. Capel,* 257 *Iowa* 285, 132 *N. W.* 2d 417 (1965); *Williams v. Benson,* 3 *Mich. App.* 9, 141 *N. W.* 2d 650 (1966); *Sorrell v. Young,* 6 *Wash. App.* 220,

491 *P. 2d* 1312 (1971); *Lawson v. Citizens & Southern National Bank of S. C.,* 259 *S. C.* 477, 193 *S. E. 2d* 124 (1972); *cf. Clauser v. Taylor,* 44 *Cal. App. 2d* 453, 112 *P. 2d* 661 (1941); *Simmons v. Evans,* 185 *Tenn.* 282, 206 *S. W. 2d* 295 (1947); *Piazzini v. Jessup,* 153 *Cal. App. 2d* 58, 314 *P. 2d* 196 (1957); *Rich v. Rankl,* 6 *Conn. Cir.* 185, 269 *A. 2d* 84, 88 (1969); *Ford v. Broussard,* 248 *So. 2d* 629 *(La. App.* 1971). See also *Restatement 2d, Torts* § 551 *(Tent. Draft No.* 12 (1966)); Keeton, "Rights of Disappointed Purchasers," 32 *Tex. L. Rev.* 1 (1953); *cf.* Bixby, "Let the. Seller Beware: Remedies for the Purchase of a Defective Home," 49 *J. Urban Law* 533 (1971); Haskell, "The Case for an Implied Warranty of Quality in Sales of Real Property," 53 *Geo. L. J.* 633 (1965); Note, "Implied Warranties. in Sales of Real Estate — The Trend to Abolish Caveat Emptor," 22 *DePaul L. Rev.* 510 (1972).

In *Obde v. Schlemeyer, supra,* 56 *Wash. 2d* 449, 353 P. 2d 672, the defendants sold an apartment house to the plaintiffs. The house was termite infested but that fact was not disclosed by the sellers to the purchasers who later sued for damages alleging fraudulent concealment. The sellers contended that they were under no obligation whatever to speak out and they relied heavily on the decision of the Massachusetts court in *Swinton* (311 *Mass.* 677, 42 *N. E. 2d* 808, 141 *A. L. R.* 965). The Supreme Court of Washington flatly rejected their contention, holding that though the parties had dealt at arms length the sellers were under "a duty to inform the plaintiffs of the termite condition" of which they were fully aware. 353 *P. 2d* at 674; *cf. Hughes v. Stusser,* 68 *Wash. 2d* 707, 415 *P. 2d* 89, 92 (1966). In the course of its opinion the court quoted approvingly from Dean Keeton's article *supra,* in 15 *Tex. L. Rev.* 1. There the author first expressed his thought that when Lord Cairns suggested in *Peek v. Gurney,* L. R. 6 H. L. 377 (1873), that there was no duty to disclose facts, no matter how "morally censurable" (at 403), he was expressing nineteenth century law as shaped by an individualistic philosophy based on freedom.

of contracts and unconcerned with morals. He then made the following comments which fairly embody a currently acceptable principle on which the holding in *Obde* may be said to be grounded:

In the present stage of the law, the decisions show a drawing away from this idea, and there can be seen an attempt by many courts to reach a just result in so far as possible, but yet maintaining the degree of certainty which the law must have. The statement may often be found that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent.

The attitude of the courts toward nondisclosure is undergoing a change and contrary to Lord Cairns' famous remark it would seem that the object of the law in these cases should be to impose on parties to the transaction a duty to speak whenever justice, equity, and fair dealing demand it. This statement is made only with reference to instances where the party to be charged is an actor in the transaction. This duty to speak does not result from an implied representation by silence, but exists because a refusal to speak constitutes unfair conduct. 15 *Tex. L. Rev.* at 31.

In *Sorrell v. Young, supra,* the Court of Appeals of Washington recently applied the holding in *Obde v. Schlemeyer, supra,* to a case where the sellers sold a residential lot to the buyers without disclosing that the lot had been filled. The buyers' evidence indicated the following: when the sellers originally acquired the lot it was below street grade and had been partially filled. They completed the filling and kept the lot until they considered it salable. At the time of the sale the fact that the land had been filled was not apparent. The sellers did not mention it at all and the buyers made no inquiry. The buyers sought a building permit and were told that expensive soil tests would be required, that piling would be necessary and that there was no assurance that a house could be built even if piling was installed. The court held that the buyers' evidence, if accepted, would support a right to rescind. In the course of its opinion it had this to say:

. . . by the turn of the century, Washington had recognized that "the tendency of the more recent cases has been to restrict rather

than extend the doctrine of *caveat emptor.*" Wooddy v. Benton Water Co., 54 Wash. 124, 127, 102 P. 1054, 1056 (1909). And, "[a]s would be expected when change in the law is taking place, there is no unanimity" in the decisions of other jurisdictions. Keeton, Rights of Disappointed Purchasers, 32 Tex. L. Rev. 1, 4 (1953). However, there is an "amorphous tendency" on the part of most courts to grant relief to a purchaser for nondisclosure of facts which would probably affect the purchaser's decision to purchase. W. Prosser, Torts § 101 (3d. ed. 1964). And consistent with Restatement of Torts § 551, comment *b* (1938), relief by way of rescission is more readily granted than damages. W. Prosser, Torts § 105 (3d ed. 1964). 491 *P. 2d* at 1314.

In *Loghry v. Capel, supra,* the plaintiffs purchased a duplex from the defendants. They examined the house briefly on two occasions and signed a document stating that they accepted the property in its "present condition." 132 *N. W. 2d* at 419. They made no inquiry about the subsoil and were not told that the house had been constructed on filled ground. They filed an action for damages charging that the sellers had fraudulently failed to disclose that the duplex was constructed on improperly compacted filled ground. The jury found in their favor and the verdict was sustained on appeal in an opinion which pointed out that "fraud may consist of concealment of a material fact." 132 *N. W. 2d* at 419. The purchasers' stipulation that they accepted the property in its present condition could not be invoked to bar their claim. See *Wolford v. Freeman,* 150 *Neb.* 537, 35 N. W. 2d 98 (1948), where the court pointed out that the purchase of property "as is" does not bar rescission grounded on fraudulent conduct of the seller. 35 *N. W. 2d* at 103.

In *Simmons v. Evans, supra,* the defendants owned a home which was serviced by a local water company. The company supplied water during the daytime but not at night. The defendants sold their home to the plaintiffs but made no mention of the limitation on the water service. The plaintiffs filed an action to rescind their purchase but the lower court dismissed it on the ground that the defendants had not made any written or verbal representations and the plaintiffs had "inspected the property, knew the source of the water sup-

ply, and could have made specific inquiry of these defendants or ascertained from other sources the true situation and, therefore, are estopped." 206 *S. W. 2d* at 296. The dismissal was reversed on appeal in an opinion which took note of the general rule that " 'one may be guilty of fraud by his silence, as where it is expressly incumbent upon him to speak concerning ·material matters that are entirely within his own knowledge.' " 206 *S. W. 2d* at 296. With respect to the plaintiffs' failure to ascertain the water situation before their purchase the court stated that the plaintiffs were surely not required "to make a night inspection in order to ascertain whether the water situation with reference to this residence was different from what it was during the day." 206 *S. W. 2d* at 297.

In *Saporta v. Barbagelata,* 220 *Cal. App. 2d* 463, 33 *Cal. Rptr.* 661 (1963), the plaintiffs sought to rescind their purchase of a house on the ground that they were defrauded by the seller's real estate agent or broker, "by reason of the concealment and nondisclosure that said house contained an extensive termite and fungus infestation, and by certain representations that said house was not so infested." A summary judgment against the plaintiffs was granted by the trial judge but was reversed on appeal in an opinion which set forth the following which we consider of particular pertinence to the present stage of litigation in the matter before us:

The principles controlling the conduct of a real estate agent or broker in the sale of real estate are well established in this state. He is not only liable to a buyer for his affirmative and intentional misrepresentations to a buyer, but he is also liable for mere nondisclosure to the buyer of defects known to him and unknown and unobservable by the buyer. (Lingsch v. Savage, 213 Cal. App. 2d 729, 29 Cal. Rptr. 201; Crawford v. Nastos, 182 Cal. App. 2d 659, 665, 6 Cal. Rptr. 425; Rothstein v. Janss Investment Corp., 45 Cal. App. 2d 64, 73, 113 P. 2d 465; Rogers v. Warden, 20 Cal. 2d 286, 289, 125 P. 2d 7.) The underlying settled rule is that every person connected with a fraud is liable for the full amount of the damages and the wrongdoers, if any, are jointly and severally liable. (Crawford v. Nastos, supra, 182 Cal. App. 2d p. 665, 6 Cal. Rptr. p. 429;

Swasey v. deL'Etanche, 17 Cal. App. 2d 713, 718, 62 P. 2d 753; Ross v. George Pepperdine Foundation, 174 Cal. App. 2d 135, 141–142, 344 P. 2d 368). Whether a matter not disclosed by a real estate broker or agent is of sufficient materiality to affect the desirability or value of the property sold, and thus make him liable for fraudulent nondisclosure, depends upon the facts of each case. (Lingsch v. Savage, supra, 213 Cal. App. 2d 729, 29 Cal. Rptr. p. 205.) In the case at bench we have allegations which present triable issues of fact tendered not only on the basis of positive misstatements and misrepresentations of fact allegedly made by Dolman, but also the alleged suppression and nondisclosure of facts known to him and unknown and unobservable by plaintiffs. 33 *Cal. Rptr.* at 667.

██ As in *Saporta, supra,* the purchasers here were entitled to withstand the seller's motion for summary judgment. They should have been permitted to proceed with their efforts to establish by testimony that they were equitably entitled to rescind because the house was extensively infested in the manner described by them, the seller was well aware of the infestation, and the seller deliberately concealed or failed to disclose the condition because of the likelihood that it would defeat the transaction. The seller may of course defend factually as well as legally and since the matter is primarily equitable in nature the factual as well as legal disputes will be for the trial judge alone. See *Hubbard v. International Mercantile Agency,* 68 *N. J. Eq.* 434, 436 (*Ch.* 1904); *Keuper v. Pyramid Bond & Mortgage Corp.,* 117 *N. J. Eq.* 110, 114–115 (*E. & A.* 1934); cf. *Steiner v. Stein,* 2 *N. J.* 367 (1949); *Bilotti v. Accurate Forming Corp.,* 39 *N. J.* 184, 198–199 (1963).

If the trial judge finds such deliberate concealment or nondisclosure of the latent infestation not observable by the purchasers on their inspection, he will still be called upon to determine whether, in the light of the full presentation before him, the concealment or nondisclosure was of such significant nature as to justify rescission. Minor conditions which ordinary sellers and purchasers would reasonably disregard as of little or no materiality in the transaction would clearly not call for judicial intervention. While the described condition may not have been quite as major as in the termite

cases which were concerned with structural impairments, to the purchasers here it apparently was of such magnitude and was so repulsive as to cause them to rescind immediately though they had earlier indicated readiness that there be adjustment at closing for damage resulting from a fire which occurred after the contract was signed. We are not prepared at his time to say that on their showing they acted either unreasonably or without equitable justification.

Our courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there. See *Schipper v. Levitt & Sons, Inc.,* 44 *N. J.* 70 (1965) ; *Reste Realty Corporation v. Cooper,* 53 *N. J.* 444 (1969) ; *cf. Marini v. Ireland,* 56 *N. J.* 130 (1970) ; *Tollen v. Gruzen, et al.,* 52 *N. J.* 202 (1968). In *Schipper* we elevated the duties of the builder-vendor in the sale of its homes and in the course of our opinion we repeatedly stressed that our law should be based on current notions of what is "right and just." 44 *N. J.* at 90. In *Reste* we expressed similar thoughts in connection with the lease of real property. We there noted that despite the lessee's acceptance of the premises in their "present condition" (a stipulation comparable to that of the purchasers in their contract here), the landlord was under a duty to disclose a material latent condition, known to him but unobservable by the tenant; we pointed out that in the circumstances "it would be a wholly inequitable application of *caveat emptor* to charge her with knowledge of it." 53 *N. J.* at 453–454. Both *Schipper and Reste* were departures from earlier decisions which are nonetheless still relied on by the seller here. No purpose would now be served by pursuing any discussion of those earlier decisions since we are satisfied that current principles grounded on justice and fair dealing, embraced throughout this opinion, clearly call for a full trial below;

to that end the judgment entered in the Appellate Division is:

Reversed and remanded.

*For reversal and remandment* — Acting Chief Justice JACOBS, Justices HALL, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*For affirmance*—None.