258 N.J. Super. 300 (1992)
609 A.2d 507
JOHN F. ALDRICH, PLAINTIFF-RESPONDENT,
v.
LEONARD E. SCHWARTZ, CORRINE F. SCHWARTZ, M. DEAN KINSEY, AND KATHERINE KINSEY, DEFENDANTS-APPELLANTS. AND TOWNSHIP OF LONG BEACH, LONG BEACH TOWNSHIP PLANNING BOARD, RICHARD R. HAWRYLO, ALEXANDRA HAWRYLO, AND COMMONWEALTH LAND TITLE INSURANCE COMPANY, AND LONG BEACH TOWNSHIP CONSTRUCTION AND ZONING OFFICE, AND RON PINGARO, LONG BEACH TOWNSHIP CONSTRUCTION OFFICIAL, AND SEAN DEVITT, LONG BEACH TOWNSHIP ZONING OFFICIAL, AND MARYLOUISE DESIMONE AND ESTATE OF ANTHONY J. DESIMONE, DEFENDANTS,
v.
RICHARD R. HAWRYLO AND ALEXANDRA HAWRYLO, THIRD-PARTY PLAINTIFFS,
v.
(ESTATE OF) ANTHONY J. DESIMONE AND MARYLOUISE DESIMONE, AND ESTATE OF ALICE SUTTER, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1992.
Decided July 7, 1992.
*302 Before Judges R.S. COHEN, ARNOLD M. STEIN, and KESTIN.
Leonard E. Schwartz argued the cause for appellants Leonard E. Schwartz and Corrine F. Schwartz (Greenberg Margolis, attorneys).
Robert E. Kingsbury argued the cause for appellants M. Dean Kinsey and Katherine Kinsey.
Beth G. Baldinger argued the cause for respondent John F. Aldrich (Stark & Stark, attorneys, Beth G. Baldinger on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
In 1969, the Long Beach Township Planning Board approved a three-lot subdivision of a parcel fronting on Long Beach Boulevard and running east to the Atlantic Ocean. As part of the subdivision process, the Board of Adjustment granted a variance reducing from 20 feet to 15 feet the minimum width of part of an easement for access from the Boulevard to the two *303 interior lots. The variance was granted subject to conditions, one of which required the southerly 45 feet of the new oceanfront lot to remain open and free of structures.
When plaintiff bought the ocean-front lot in 1989, he was unaware of the restriction on building within the southerly 45 feet. We hold that plaintiff is nevertheless bound by the restriction, but also that plaintiff may apply to the Board of Adjustment and/or to the Law Division for relief. We therefore reverse the summary judgment granted to plaintiff by the Chancery Division judge.
Alice B. Sutter owned Parcel 29 in the North Beach section of Long Beach Township. She and her late husband bought the property in 1949. It is in a narrow section of Long Beach Island, an eighteen-mile long sand-bar barrier island with a single road, Long Beach Boulevard, running its length. To the east is the Atlantic Ocean. To the west is Barnegat Bay.[1]
Parcel 29 was rectangular. It was 100 feet wide on the Boulevard and on the ocean beach. Its east-to-west sidelines were 462 feet long to the high water line of the ocean, with the easterly 142 feet consisting of dunes and beach. The Sutter house fronted on the Boulevard.
In 1969, Mrs. Sutter applied for a subdivision to divide her land into three lots. She would retain her house on the new Lot 1, which would be 100 feet wide on the Boulevard and 120 feet deep. Lot 2 would be 100 feet by 100 feet. Lot 3 would be 100 feet wide by 242 feet deep. Lot 3 would be nearest the ocean, and would include the 142 feet of dunes and beach, which would be subject to use by all three lots or to conveyance to the Township for public use.
The Township zoning ordinance permitted beach-to-boulevard strips like Mrs. Sutter's to be subdivided without creation of *304 public access streets to the interior lots. Instead, it prescribed a 20-foot wide easement running from the Boulevard to the ocean-front lot. In this case, the easement would be 220 feet long, and would run over the southerly 20 feet of Lots 1 and 2, to the western line of Lot 3, where it would end. At that point, a five-foot walkway would continue to the beach.
There was a problem. Mrs. Sutter's house was less than 18 feet from her southerly sideline, and she therefore did not have room for the necessary easement. Everything else was in order, however, so the Planning Board approved the subdivision of Parcel 29, subject to the grant of a variance by the Board of Adjustment to permit a narrow easement.[2]
The variance application and resolution granting it concerned the entire Parcel 29. The Board of Adjustment granted a variance permitting reduction of the easement width from 20 to 15 feet for the first 75 feet easterly from the Boulevard past the Sutter house. For its remaining 145 feet, the easement resumed the required width of 20 feet. The Board resolution was subject to a number of conditions, one of which was:
In order to reconcile the probable orientation of the dwelling house to be constructed on Lot 3, with the southerly orientation of the front yard of Lot 2, there shall be an open space of 45 feet, measured from the southerly line of Lot 3 and any dwelling house or accessory structures shall be constructed north of said open space.
The Board resolution also stated:
Suitable indications of the foregoing conditions shall be incorporated into the subdivision plan to be resubmitted to the Planning Board.
After obtaining the variance, Mrs. Sutter submitted to the Planning Board a subdivision plan showing the narrowed easement and the 45-foot building setback line for Lot 3. The Planning Board approved the plan.
*305 In 1969, N.J.S.A. 40:55-1.17 provided that an approved subdivision plan be filed or recorded in the county recording office. The Sutter subdivision plan was never submitted for filing or recording. The record before us does not reveal why. The Planning Board's minutes record the decisions of that agency, and the Board of Adjustment's minutes record its actions. They are presumably available in the Township offices.
Mrs. Sutter sold each of the three lots. Ocean-front Lot 3 was bought by a corporation and resold to defendants DeSimone. They built a house on it, conforming to the variance condition, and sold to defendants Hawrylo, who sold in 1989 to plaintiff for $785,000. Lot 2 was bought by the Kinseys. In 1980 they built a house on it, sited to take advantage of the open space between the DeSimone house and its southerly neighbor. Lot 1 was bought by the Schwartzes. They subsequently made substantial improvements to the Sutter house.
Plaintiff bought the Hawrylo house and lot with the intention to demolish the house and, in plaintiff's words, "to build the ocean front home of [his] dreams." That involved building to within 20 feet of the southerly sideline of the lot, which was permitted by the zoning ordinance, but prohibited by the 1969 variance condition. When plaintiff presented his building plans to the Township, he was told, for the first time, about the building restriction.
Plaintiff sued his new neighbors, the Kinseys and the Schwartzes; his predecessors in title; his title insurance company; the Township; and a number of Township officials. His multi-count complaint sought a judgment (1) quieting title, (2) declaring the building setback unenforceable under the statutes regarding land use regulation, (3) declaring the building setback unenforceable as an unrecorded air right or sight easement, (4) compelling the Township and its officials to issue plaintiff a building permit, (5) requiring the title insurance company to defend plaintiff's title, (6) declaring the restriction *306 void and unenforceable because not filed or recorded within 90 days, and (7) invalidating the restriction.
There were answers, counterclaims, crossclaims and third-party claims. Plaintiff moved for summary judgment declaring the building restriction unenforceable and requiring the Township to issue a building permit. Plaintiff's predecessors in title and his title insurance company supported his motion. Less expectably, the Planning Board also supported plaintiff's position.[3] The Kinseys and Schwartzes filed cross-motions for summary judgment.
The Chancery Division judge granted plaintiff summary judgment. He concluded that plaintiff was "a bona fide purchaser for value, without actual notice of the condition." He further concluded that plaintiff did not have constructive notice of the condition from deed references in his chain of title to a "certain subdivision plan of Lot 29" or from the physical locations of the existing Hawrylo and Kinsey houses. In the judge's view, the deed references were not "definite enough to be a clue," in the absence of a filed map, to prompt a searcher to go to the planning board records to find the terms of the subdivision. Likewise, he concluded that the locations of the houses did not create a duty to investigate the reasons for the pattern in which *307 they were laid out. Only a "reasonable search" is required of a buyer, reasoned the judge, citing Palamarg Realty Co. v. Rehac, 80 N.J. 446, 404 A.2d 21 (1979), and the absence of a recorded subdivision map relieved plaintiff from the setback condition.
Before the Chancery Division and here, the parties have argued the effect of the recording statutes, the scope of a reasonable search, and the impact of the failure of the subdivision plan to be filed. There is another matter, however, to which they have given insufficient emphasis, and which is dispositive of plaintiff's appeal. It is the question whether the variance itself, embodied in the resolution of the Board of Adjustment, was binding on subsequent owners, in all of its terms, even if they had no notice or knowledge of it, and even if the subdivision was not perfected. We hold that it was binding, despite plaintiff's ignorance of it, and whether or not a reasonable search would have revealed it.
An examination of the question engages two legitimate but competing concerns. The first is the concern that, before consummating a purchase or security transaction, a buyer or lienor of real property should be able to discover and evaluate all of the interests in and restrictions on the property. The principal method of ascertaining the needed information, other than physical inspection, is the examination of documents placed on the public record for the purpose of affording such information. Thus, an innocent but diligent purchaser or lienor for value should be able to rely on the public record, and thus be protected from interests and restrictions which are not revealed by recorded documents that are reasonably accessible.
From this point of view, it is reasonable to argue that a use restriction or bulk restriction created and represented only by a board of adjustment resolution, not referred to in any recorded document in an innocent buyer's chain of title, ought not bind an innocent buyer. Board of adjustment minutes contain board resolutions and are kept in municipal offices. However, unlike *308 plats describing planning board determinations, which must be recorded in the county seat, there is no statutory requirement that board of adjustment resolutions or minutes be recorded, or indexed, or preserved in any readily accessible form. Variance conditions can be recited in a recorded deed, but we suspect it is rarely done. We also imagine that the accessibility of board of adjustment resolutions and minutes varies widely from town to town. As a result, a title searcher trying to determine whether property was subjected to a variance condition in the past would face a daunting task in many municipalities.
The second and competing concern is, however, an important one. It is that, over the years and throughout the State, many variances have been approved with conditions. Some of the conditions may have been illegal, Berninger v. Board of Adjustment of Midland Park, 254 N.J. Super. 401, 603 A.2d 954 (App.Div. 1991), aff'd o.b., 127 N.J. 226, 603 A.2d 946 (1992), and some reasonable, Davis Enters. v. Karpf, 105 N.J. 476, 478, 523 A.2d 137 (1987). Some of them, however, may have been reasonably considered by the board of adjustment to have been absolutely necessary limitations to protect the public interest from negative side effects of the variance. The fate of the variance application may thus have depended on the crafting of conditions which were expected to endure for the life of the variance. See State v. Farmland-Fair Lawn Dairies, Inc., 70 N.J. Super. 19, 174 A.2d 598 (App.Div. 1961), certif. denied, 38 N.J. 301, 184 A.2d 417 (1962). In addition, neighbors and neighborhoods may have relied for their own development and living plans on the existence of conditions imposed by boards of adjustment.
Variances run with the land, and are not personal to the property owner who obtained the grant. DeFelice v. Zoning Bd. of Adjustment of Point Pleasant Beach, 216 N.J. Super. 377, 381, 523 A.2d 1086 (App.Div. 1987); Farrell v. Estell Manor Zoning Bd. of Adjustment, 193 N.J. Super. 554, 558, 475 A.2d 94 (Law Div. 1984). If subsequent owners are entitled to *309 the benefits of the variance and the value it adds to the property, even though they are unaware of its existence, they should enjoy those benefits limited by any restrictions which were lawfully attached as conditions, subject to current zoning agency relief.
The difficulty is that the new owner may have no reasonable way to find out if any such restrictions exist. A buyer takes subject to current land use ordinances, whether or not the buyer bothered to find out what effect they had on the use of the property. Giordano v. Mayor and Council of Dumont, 137 N.J.L. 740, 742, 61 A.2d 245 (E. & A. 1937); Josefowicz v. Porter, 32 N.J. Super. 585, 590, 108 A.2d 865 (App.Div. 1954). But, if the use and situation of the property conform to current ordinances, property inspection and current ordinance research will not reveal the possibility of earlier zoning agency action.
Such is the case here. Everything about plaintiff's lot and existing house, the Kinseys' lot and house, and the Schwartzes' lot and house conform to current zoning standards. The only present clue to prior zoning agency action would be the slight narrowing of the access easement as it crosses the Schwartz lot. However, the narrowing is not evident on physical inspection, and, anyway, it is not now part of plaintiff's property. If a survey showed the narrowing, it would not necessarily alert one to a 20-year old variance with conditions. Only an actual inquiry at the Township offices, either at the building department or at the Board of Adjustment, would have revealed the existence of the 1969 variance condition. The public record available to a reasonable title searcher shows only that at some earlier date, plaintiff's lot was created by subdivision. That could have occurred under one of three different statutes. See N.J.S.A. 40:55-1.17 (Municipal Planning Act); N.J.S.A. 40:55D-54 (MLUL); N.J.S.A. 46:23-9.14, -9.15 (Map Filing Law). An assiduous search would lead to the minutes of the Planning Board, and ultimately to the minutes of the Board of Adjustment, but such an extensive and intensive title investigation is not routinely done, and would be costly to a property buyer.
*310 The balance of competing concerns is not an easy one to strike. Any resolution creates a real risk of unfairness, either to innocent buyers or to the protected public. We approach the problem not as one involving title searches and what they can reasonably reveal, but as one implicating the strong public interest in the enforceability of variance conditions, in the neighborhoods they protect, and in the expectations that have reasonably grown up around them. Our holding that plaintiff is bound by the 1969 restriction is dictated by land planning considerations, and by the danger that a decision devitalizing long-standing variance conditions may prejudice existing development and the zoning plan of some towns and neighborhoods.
The root of the problem is the absence of any statutory duty for a municipality to maintain board resolutions in an indexed and reasonably accessible form, or for a board imposing a variance condition to see that it is recited in a deed or other recordable instrument. Legislative attention is needed, but would not solve the problem of the enforceability of decades of unrecorded variance conditions.[4] In the meanwhile, it would be advisable for boards of adjustment to require recipients of variances with conditions to record deeds to themselves reciting the board's actions, in order to give fair notice to the world.
A buyer may seek relief from variance conditions. An innocent buyer may seek recission or fraud damages from a seller who knew but concealed the existence of a variance condition. See Weintraub v. Krobatsch, 64 N.J. 445, 317 A.2d 68 (1974).[5]
Another possibility is to seek a judgment declaring that the condition was invalid when it was imposed and attached to the variance. At one time, it was thought that an invalidation *311 of a variance condition also condemned the variance. See Borough of North Plainfield v. Perone, 54 N.J. Super. 1, 11, 148 A.2d 50 (App.Div.), certif. denied, 29 N.J. 507, 150 A.2d 292 (1959). However, it is now clear that an unlawful condition imposed on an otherwise valid variance may be stricken, in the proper circumstances, even if the variance benefit has been accepted. Orloski v. Planning Bd. of Ship Bottom, 234 N.J. Super. 1, 2, 559 A.2d 1380 (App.Div. 1989); DeFelice, supra, 216 N.J. Super. at 383, 523 A.2d 1086.
A variance condition must be reasonably calculated to achieve some legitimate land use purpose. If it was not, and was thus invalid when imposed, it can be excised, unless the use permitted by the variance, if continued without the condition, would alter the character of the neighborhood or do violence to the zoning plan, Berninger, supra, 254 N.J. Super. at 405-07, 603 A.2d 954, or unless a balance of equities favors protection of property development patterns that have relied on the existence of the condition and fairly call for its continuation.
A buyer's third opportunity is to apply for a variance to the Board of Adjustment, seeking cancellation of the variance condition on grounds cognizable under N.J.S.A. 40:55D-70c(1) and (2). The model for such an application exists. In Farmland-Fairlawn Dairies, supra, the dairy obtained a variance for an ice plant in a residential zone, conditioned on the agreement of the dairy not to use ammonia in the refrigeration process. The dairy violated the condition and defended the resulting prosecution on the thesis that the condition was unreasonable and arbitrary. The Appellate Division rejected that argument, reasoning that the Board of Adjustment was concerned about the dangers of the use of ammonia, and probably would have denied the variance unless it could impose the restriction. 70 N.J. Super. at 24, 174 A.2d 598.
A few years later, the dairy returned to the Board of Adjustment with an application for either a new variance or modification of the old one to remove the restriction against ammonia *312 use. Cohen v. Borough of Fair Lawn, 85 N.J. Super. 234, 204 A.2d 375 (App.Div. 1964). It proved to the Board's satisfaction that there was no current safety problem. The condition was stricken, and the Appellate Division affirmed. Id. at 237-39, 204 A.2d 375. See also Sherman v. Borough of Harvey Cedars Zoning Bd. of Adjustment, 242 N.J. Super. 421, 429-30, 577 A.2d 170 (App.Div.), certif. denied, 122 N.J. 404, 585 A.2d 402 (1990) (recognizing that variance conditions can be lifted by boards of adjustment upon a showing of changed circumstances or other good cause); cf. Soussa v. Denville Tp. Planning Bd., 238 N.J. Super. 66, 568 A.2d 1225 (App.Div. 1990) (planning board's bar on further subdivision which was included in deed as a restrictive covenant could not be canceled by the planning board; rather, proper recourse was Chancery Division suit to quiet title).
In entertaining an application to strike a variance condition, a board of adjustment should consider all of the criteria ordinarily relevant to a variance application. Among other things, it should sympathetically consider reliant patterns of existing neighborhood use and development, and should be aware of the danger of violence to the zone plan. It should also consider whether the original purpose of the variance condition remains intact, and whether the interests it protects still exist.[6]
We reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.
NOTES
[1] Long Beach Island and the Boulevard actually run northeast-southwest. For simplicity's sake, the ocean side will be described as the east, and the bay side as the west.
[2] Until adoption of the Municipal Land Use Law (MLUL), L. 1975, c. 291, only the planning board could grant subdivision approval, and only the board of adjustment could grant a bulk variance. Compare N.J.S.A. 40:55-1.14 and 39c (repealed 1975) with N.J.S.A. 40:55D-25a(2), a(6), -60a and 70c.
[3] Even less expectably, a local lawyer who represented the Hawrylos had written a letter to defendant Schwartz about four months before the Hawrylo-to-plaintiff title closing. In the letter, the lawyer asserted his opinion that the 1969 building restriction was invalid, and stated that he had so advised the Hawrylos. At the time, the lawyer's partner was the Township Attorney. The Hawrylos then retained a different attorney to represent them in the property sale; that attorney was unaware of the 1969 building restriction. After the closing, another lawyer in the local firm wrote a formal opinion to the Township Building Official advising him that he had to observe the 45-foot setback. Presumably, that opinion was rendered on behalf of the Township Attorney. Plaintiff has a damage count against the Hawrylos for failure to reveal their knowledge of the existence of the variance condition.

The Hawrylos are not unfamiliar with ameliorative conditions attached to variances. See Hawrylo v. Board of Adjustment, Harding Tp., 249 N.J. Super. 568, 575, 584, 592 A.2d 1236 (App.Div. 1991).
[4] Planning board actions and some board of adjustment actions under the MLUL normally generate a plat which is filed in the county recording office.
[5] Perhaps the Bar should consider whether specific new contract language focusing on this matter should be formulated to protect buyers from these risks.
[6] We do not address the viability of a variance restriction or condition if the use for which the variance was granted becomes generally permitted by zoning ordinance amendment.