281 N.J. Super. 201 (1995)
656 A.2d 1304
JOHN F. ALDRICH, PLAINTIFF-RESPONDENT,
v.
RICHARD R. HAWRYLO, ALEXANDRA HAWRYLO, DEFENDANTS-RESPONDENTS, AND COMMONWEALTH LAND TITLE INSURANCE COMPANY, DEFENDANT-APPELLANT, AND MARY JANE HOLLAND AND HCH, INC., DEFENDANTS. JOHN F. ALDRICH, PLAINTIFF, AND RICHARD R. HAWRYLO AND ALEXANDRA HAWRYLO, DEFENDANTS-THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
COLIN R. HAZELTINE, ESQ., SHACKLETON, HAZELTINE AND BISHOP, ESQS., THIRD PARTY DEFENDANTS-APPELLANTS, AND ANTHONY J. DESIMONE AND MARY LOUISE DESIMONE, HIS WIFE, THE ESTATE OF ALICE SUTTER, TOWNSHIP OF LONG BEACH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, SEAN DEVITT, ZONING OFFICIAL OF THE TOWNSHIP OF LONG BEACH, CORTES & HAY, INC. AND JAMES KEARNS, ET ALS., THIRD PARTY DEFENDANTS. COMMONWEALTH LAND TITLE INSURANCE CO., CORTES & HAY AND JAMES KEARNS, DEFENDANTS-THIRD PARTY PLAINTIFFS,
v.
HORN, TYSON & YODER, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1995.
Decided May 4, 1995.
Motion for Reconsideration  Granted June 6, 1995.
Opinion after Reconsideration  Decided July 19, 1995.
*203 Before Judges DREIER, VILLANUEVA and WEFING.
Joseph M. Clayton, Jr. argued the cause for appellant Commonwealth Land Title Insurance Company (Mr. Clayton, attorney and on the brief).
*204 Richard J. Schachter argued the cause for respondents Richard R. Hawrylo and Alexandra Hawrylo (Schachter, Trombadore, Offen, Stanton & Pavics, attorneys; Lisa A. Rabke, on the brief).
Richard P. Cushing argued the cause for respondent John F. Aldrich (Gebhardt & Kiefer, attorneys; Mr. Cushing, of counsel; Deborah B. Rosenthal, on the brief).
Richard A. Amdur argued the cause for appellants Colin R. Hazeltine and Shackleton, Hazeltine and Bishop (Amdur, Boyle, Maggs & McDermott, attorneys; Elizabeth Wilson, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
These two interlocutory appeals arising out of the same lawsuit involve a 45-foot setback restriction contained in a 1969 zoning board of adjustment variance approval for property that was granted when that property was subdivided. The property is currently owned by plaintiff John F. Aldrich (plaintiff or Aldrich). Commonwealth Land Title Insurance Company (Commonwealth) appeals pursuant to leave granted from a partial summary judgment on the issue of policy coverage entered in favor of Aldrich and Richard R. and Alexandra Hawrylo (the Hawrylos).
In the second appeal by Colin R. Hazeltine, Esq., and the law firm of Shackleton, Hazeltine & Bishop (the Hazeltine defendants), the Hazeltine defendants appeal pursuant to leave granted from a partial summary judgment in favor of the Hawrylos on the issue of whether the Hazeltine defendants had a duty to disclose the existence of the setback restriction.

I.
On November 10, 1989, plaintiff purchased oceanfront property  Lot 3, Block 18.29 on the official tax map of Long Beach Township  from the Hawrylos for $785,000. The Hawrylos had purchased the subject premises from Anthony and Mary Louise *205 DeSimone on October 10, 1985. Plaintiff and the Hawrylos both had their titles insured by Commonwealth.
Plaintiff was in the process of preparing to raze the existing structure and build a larger dwelling on the premises when he learned that at the time the property was subdivided in 1969, the Long Beach Board of Adjustment granted the then-owner a variance from one portion of a Township ordinance and imposed, as a condition, that any future dwelling built on the subject ocean-front lot have a 45-foot setback from the southerly line of the lot. Aldrich did not know of this condition when he purchased the property and was not able to build his desired house. The Hawrylos concede that they were aware of the restriction at the time of the sale to plaintiff; however, they contend they were informed by the Hazeltine defendants and Commonwealth that the set-back restriction was invalid so they did not have to disclose it to Aldrich.
Plaintiff originally brought an action in the Chancery Division to, among other things, compel the issuance of a building permit. Plaintiff also made a claim under his policy of title insurance from Commonwealth to compel it to indemnify plaintiff for the loss. Commonwealth denied plaintiff's claim stating that the zoning variance restriction was excluded from coverage under the policy.
The Chancery Division judge found that the variance restriction was not enforceable against plaintiff since plaintiff had neither actual nor constructive notice of the zoning variance and of the condition contained therein. However, the Appellate Division reversed the trial court, stating that:
In 1969, the Long Beach Township Planning Board approved a three-lot subdivision of a parcel fronting on Long Beach Boulevard and running east to the Atlantic Ocean. As part of the subdivision process, the Board of Adjustment granted a variance reducing from 20 feet to 15 feet the minimum width of part of an easement for access from the Boulevard to the two interior lots. The variance was granted subject to conditions, one of which required the southerly 45 feet of the new ocean front lot to remain open and free of structures.
When plaintiff bought the ocean-front lot in 1989, he was unaware of the restriction on building within the southerly 45 feet. We hold that plaintiff is nevertheless bound by the restriction, but also that plaintiff may apply to the *206 Board of Adjustment and/or to the Law Division for relief. We therefore reverse the summary judgment granted to plaintiff by the Chancery Division judge.
[Aldrich v. Schwartz, 258 N.J. Super. 300, 302-03, 609 A.2d 507 (App.Div. 1992).]
After receiving that decision, plaintiff apparently did not further pursue his attempt to obtain a building permit without the set-back restriction, but instead brought this action for money damages against several defendants, including the Hawrylos and Commonwealth. The Hawrylos brought a third party complaint against Commonwealth.
Plaintiff then moved for summary judgment. The court granted a partial summary judgment in favor of plaintiff and the Hawrylos against Commonwealth on the issue of policy coverage, but denied plaintiff's and Hawrylos' summary judgment motion as to the issue of Commonwealth's alleged negligence. We granted Commonwealth's motion for leave to appeal.
Also as part of this action, the Hawrylos brought a third party complaint against the Hazeltine defendants, who represented the Hawrylos at the time of their purchase of the property from the DeSimones in 1985. The Hawrylos claim that they relied on advice from the Hazeltine defendants that they did not have an obligation to disclose to a purchaser the existence of the restriction because it was invalid. The Hazeltine defendants brought a motion for summary judgment against the Hawrylos who responded with a cross-motion for summary judgment. The court granted partial summary judgment against the Hazeltine defendants "on the issue of breach of duty [to disclose] only. The Hawrylos' motion for summary judgment as to proximate cause of damage is denied." We granted the Hazeltine defendants leave to appeal the partial summary judgment in favor of the Hawrylos against them.

II.
Commonwealth appeals on two grounds: (1) the trial court's finding that the policy provided coverage was erroneous because violations of zoning ordinances or variances are specifically excluded in the policy; and (2) the trial court's order in favor of the *207 Hawrylos was also erroneous because they were not in title at the time of the lawsuit and any title warranties made by them were knowingly false.
It is well established that:
A title insurance policy is a contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to, or liens or encumbrances upon realty in which the insured has an interest.
[Sandler v. N.J. Realty Title Insurance Co., 36 N.J. 471, 478-79, 178 A.2d 1 (1962).]
The general rules of construction of insurance policies apply to title insurance policies. Id. at 479, 178 A.2d 1. "Title policies, like other policies of insurance, are construed to give effect to the intention of the parties as manifested by the reasonable meaning of policy terms." Amidano v. Donnelly, 260 N.J. Super. 148, 154, 615 A.2d 654 (App.Div. 1992), certif. denied, 133 N.J. 435, 627 A.2d 1141 (1993). Land use is "subordinate to the police power; and zoning is comprehended in the police power exerted by the amendment of October 18, 1927, to the State Constitution of 1844 (P.L. 1928, p. 820) and Article IV, section VI, paragraph 2 of the Constitution of 1947." Collins v. Board of Adjustment of Margate City, 3 N.J. 200, 205, 69 A.2d 708 (1949). "The police power of the state may be delegated to the state's municipal subdivisions created for the administration of local self government, to be exerted whenever necessary for the general good and welfare." Mansfield & Swett, Inc., v. West Orange, 120 N.J.L. 145, 151, 198 A. 225 (Sup.Ct. 1938).
According to R. 4:69-5, "actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted." Because there is no evidence in the record that plaintiff sought a variance before building on his premises, it could be said that plaintiff did not exhaust his administrative remedies before bringing this suit. However, given that the 45-foot setback requirement was imposed to preserve the ocean view of an adjacent inner lot from which the subject premises were subdivided, it is doubtful *208 whether plaintiff would have in fact obtained a variance. Obviously, the Schwartzes (adjoining owners) would have strenuously opposed elimination of the restriction because it would cause them to lose their view of the ocean.
In reviewing a trial court's decision of a summary judgment, this court must first determine whether there are genuine issues of fact, and if not, whether the lower court's finding was correct. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74-75, 110 A.2d 24 (1954). Herein, Commonwealth claims that any loss suffered by plaintiff arising out of the 45-foot setback restriction was specifically excluded under the policy. The relevant exclusion states:
EXCLUSIONS
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
 land use
 improvements on the land
 land division
 environmental protection
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks. (inapplicable herein).
The 45-foot setback restriction was imposed in a 1969 resolution of the Board of Adjustment of Long Beach Township upon application of Alice B. Sutter, a predecessor in title to plaintiff. The circumstances of the variance have previously been set forth in Aldrich v. Schwartz, supra, as follows:
In 1969, Mrs. Sutter applied for a subdivision to divide her land into three lots. She would retain her house on the new Lot 1, which would be 100 feet wide on the Boulevard and 120 feet deep. Lot 2 would be 100 feet by 100 feet. Lot 3 would be 100 feet wide by 242 feet deep. Lot 3 would be nearest the ocean, and would include the 142 feet of dunes and beach, which would be subject to use by all three lots or to conveyance to the Township for public use.
The Township zoning ordinance permitted beach-to-boulevard strips like Mrs. Sutter's to be subdivided without creation of public access streets to the interior lots. Instead, it prescribed a 20-foot wide easement running from the Boulevard to the ocean-front lot. In this case, the easement would be 220 feet long, and would run over the southerly 20 feet of Lots 1 and 2, to the western line of Lot 3, *209 where it would end. At that point, a five-foot walkway would continue to the beach.
There was a problem. Mrs. Sutter's house was less than 18 feet from her southerly sideline, and she therefore did not have room for the necessary easement. Everything else was in order, however, so the Planning Board approved the subdivision of Parcel 29, subject to the grant of a variance by the Board of Adjustment to permit a narrow easement.
[Id. at 303-304, 609 A.2d 507.]
In the resolution granting the variance, the Board declared
that a variance be granted to Alice B. Sutter to permit the subdivision of the said Tract 29 without providing a 20 foot wide easement for the entire length of the tract to be subdivided, subject to the following conditions:
........
5. In order to reconcile the probable orientation of the dwelling house to be constructed on Lot 3, with the southerly orientation of the front yard of Lot 2, there shall be an open space of 45 feet, measured from the southerly line of Lot 3 and any dwelling house or accessory structures shall be constructed north of said open space....
No reference to this setback was mentioned in plaintiff's deed or the chain of title. The setback was indicated on a subdivision plan but there is no evidence that this plan was recorded. According to N.J.S.A. 40:55-1.17, which was in effect at the time the variance was granted but has since been repealed:
No plat shall be accepted for filing by the county recording officer until it has been approved by the governing body or the planning board, as the case may be, if such approval is required by local ordinance, and such approval has been endorsed on the instrument in such manner as the governing body may designate.
It shall be the duty of the county recording officer to notify the planning board in writing within three days of the filing of any plat approved by the governing body or planning board, identifying such plat by its title, date of filing, and official number. L. 1953, c. 433, p. 2178, § 17.
The title insurance policy issued to plaintiff includes in a section entitled "Covered Title Risks" the "[d]efective recording of any document." This court stated in Aldrich v. Schwartz, supra, that N.J.S.A. 40:55-1.17 required that all approved subdivision plans be recorded in the county recording office. 258 N.J. Super. at 305, 609 A.2d 507. However, all counsel now agree that there was no mandatory requirement that this minor subdivision plan be *210 recorded in the county recording office. Therefore, failure to file this plan does not constitute a "defective recording."
Plaintiff and the Hawrylos claim that this 45-foot setback constitutes a title defect and therefore is covered under the policy because it is an easement, not a zoning restriction or condition. In support of that position, plaintiff argues that this case is similar to Amidano v. Donnelly, supra. This contention is clearly without merit. R. 2:11-3(e)(1)(E). In Amidano, this court reversed the trial court's decision, stating that because the title insurance company failed specifically to except a recorded easement from coverage, the title insurance company could not deny liability. Id. 260 N.J. Super. at 155-58, 615 A.2d 654. Amidano involved a recorded easement, not a zoning variance restriction or condition, and therefore is not applicable to the issue of coverage in the present case.
In addition, Aldrich and the Hawrylos claim that the title insurance company should have been on notice of the setback because there was a reference to the subdivision plan in plaintiff's chain of title. However, a passing reference to an unfiled subdivision plan in the chain of title is not notice of a setback on that plan.
Title insurance policies generally exclude from coverage the exercise of police power over matters of land use, land division and building because such matters are said not to be matters affecting title. Matters of title within the common perception are generally those matters which arise from missing, invalid or unauthorized signatures, actions of an owner of land in conveying all or part of it, creating easements, conditions or restrictions on the title, or encumbering it with mortgages or other liens.
Thus, title insurers seek to exclude the exercise of police power from coverage because it is not a title matter and generally cannot be ascertained from an examination of the title records. Furthermore, it is not the practice in New Jersey for title searchers to *211 search municipal board of adjustment or planning board records for unrecorded variances.
Because zoning ordinances and planning board and board of adjustment resolutions are not title matters, are not part of the public land records and do not impart constructive notice to purchasers, they are not searched by title insurers and they are excluded from coverage in title insurance policies. The police power exclusion in the policy squarely places on the prospective purchaser and his attorney the burden of investigation and compliance with local ordinances and land use resolutions as they may affect a particular property.
The exclusion in the title insurance policy states "Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: land use [and] improvements on the land." The 45-foot setback was created by a resolution of a board of adjustment and was indicated on a subdivision plan that was never recorded or required to be recorded. Because this claim or loss arises out of the exercise of the police power and does not fall within coverage described in items 12 and 13 of the covered title risks, the exclusion governs. Therefore, this police power exclusion precludes coverage under the Commonwealth policy for Aldrich's alleged loss, and there is no coverage under the Commonwealth policy issued to the Hawrylos for any loss the Hawrylos may suffer.
Commonwealth also argues that its liability is limited to the policy and issues of negligence are not before the court. In the trial judge's decision on the summary judgment motion, she granted summary judgment in favor of plaintiff and the Hawrylos only on the issue of policy coverage, not on the issue of negligence. Commonwealth claims that its liability should be based solely on the title insurance policy and not on negligence principles. It is well established that,
[i]n this state, the rule has been that a title company's liability is limited to the policy and that the company is not liable in tort for negligence in searching records. *212 Underlying that rule is the premise that the duty of the title company, unlike the duty of a title searcher, does not depend on negligence, but on the agreement between the parties.... If, however, the title company agrees to conduct a search and provide the insured with an abstract of title in addition to the title policy, it may expose itself to liability for negligence as a title searcher in addition to its liability under the policy.
[Walker Rogge, Inc. v. Chelsea Title & Guaranty Co., 116 N.J. 517, 535, 562 A.2d 208 (1989) (citations omitted)].
However, neither Commonwealth, Aldrich, or the Hawrylos appealed the trial Court's denial of summary judgment on the issue of Commonwealth's negligence. In fact, Commonwealth in its appellate brief specifically stated that the issue of Commonwealth's alleged negligence was not before this court.
It is therefore unnecessary for us to determine whether the court erred in not granting summary judgment in favor of the Hawrylos against Commonwealth where one of the issues is whether the Hawrylos knowingly made a false representation to Aldrich in an affidavit of title. The trial court described that as an issue of fact which would have to be resolved at trial.

III.
The Hazeltine defendants appeal on two grounds: (1) the trial court erroneously acted as both judge and jury in granting the partial summary judgment without hearing expert testimony and inappropriately extended the holding of Strawn v. Canuso, 271 N.J. Super. 88, 638 A.2d 141 (App.Div. 1994), since aff'd, Incollingo v. Canuso, 137 N.J. 303, 645 A.2d 134 (1995), to find a duty of disclosure; and (2) the court's denial of their motion for reconsideration was erroneous because they are the party entitled to summary judgment or, in the alternative, at least questions of fact exist precluding summary judgment against them.
In 1985, third-party defendant Colin R. Hazeltine, Esq. represented the Hawrylos when they purchased the subject property. At the time of the closing, the 45-foot setback restriction was not revealed or discovered. In connection with that closing, Commonwealth performed a title search and issued a title insurance policy that made no reference to the restriction.
*213 In the summer of 1989, Mrs. Hawrylo contacted Mr. Hazeltine to advise him that the Hawrylos had been made aware by their neighbors that a 45-foot setback restriction might exist affecting their property. The Hawrylos then contacted Mr. Hazeltine for the sole purpose of having him review his file to ascertain whether this restriction appeared anywhere and to send a letter regarding same to the Hawrylos' neighbor, Mr. Schwartz, who was the originator of the rumors about the restriction.
Mr. Hazeltine reviewed his original file from the closing and ascertained that the restriction was not noted on the title binder, the title policy or the deed. He then called Commonwealth and requested them to recheck their file thoroughly to ascertain whether there was anything that had been overlooked. Commonwealth responded that there was nothing other than what already appeared in Mr. Hazeltine's file.
In addition, the real estate agent, Mary Jane Holland, went to the township office twice to examine the township records but found no such recorded restriction. She advised Mr. Hazeltine of the results of her research. Mr. Hazeltine subsequently wrote a letter to Mr. and Mrs. Schwartz dated August 30, 1989 wherein he indicated his opinion that because there had been "no formal filing of a map ... or recorded deed establishing restrictions," the Hawrylos were free to convey their property with representations that there are no restrictions other than the normal setback requirements under the township zoning ordinances.
It is undisputed that Mr. Hazeltine did not in any way represent the Hawrylos with regard to their sale of the property. The Hawrylos did not discuss the listing agreement with him. In fact, the Hawrylos were represented by separate counsel with whom they discussed the potential problem of the alleged restriction and received his advice that it was not necessary to inform the purchaser of same.
The trial court here determined that expert testimony was not needed in this legal malpractice suit, citing the case of Brizak *214 v. Needle, 239 N.J. Super. 415, 571 A.2d 975 (App.Div.), certif. denied, 122 N.J. 164, 584 A.2d 230 (1990), for the proposition that "[e]xpert evidence is not required in a legal malpractice case to establish an attorney's duty of care where the duty is so basic that it may be determined by the court as a matter of law." Id. at 429, 571 A.2d 975.
Although in Brizak we held that expert testimony was not necessary, we issued the following caveat with respect to the necessity for expert testimony in a legal malpractice action:
We do not want to leave the wrong impression. Although expert testimony is not necessary to establish the negligence of a personal injury attorney who fails to conduct any investigation of his client's claim, where the attorney has undertaken some investigation, a jury will rarely be able to evaluate its adequacy without the aid of expert legal opinion.
[239 N.J. Super. at 432, 571 A.2d 975.]
Thus, it is clear that normally in legal malpractice cases, expert testimony is required to establish the "`degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.'" Id. at 428, 571 A.2d 975 (quoting St. Pius X House of Retreats v. Camden Dioc., 88 N.J. 571, 588, 443 A.2d 1052 (1982)). The Hazeltine defendants conducted extensive investigation into the question presented by their client prior to rendering an opinion. A jury would not be able to evaluate the adequacy of the investigation or the opinion without the aid of expert legal testimony.
The trial court based its decision on this court's opinion in Strawn v. Canuso, supra. In that case, the trial court imposed a duty on a commercial housing developer-seller to disclose the existence of an off-site landfill located near the development. 271 N.J. Super. at 94, 104, 638 A.2d 141. Thus, although that case was decided subsequent to the Hawrylos' purchase of the property, it was not the law regarding the duty to disclose at the time involved nor is it necessarily applicable to this case.
However, Strawn v. Canuso was not the first case to impose a duty to disclose on a seller. In Weintraub v. Krobatsch, 64 N.J. 445, 317 A.2d 68 (1974), the Supreme Court held that failure to *215 disclose a material fact may be grounds for rescission of the contract of sale of property. However, the Court maintained that "[t]he seller may of course defend factually as well as legally." Id. at 455, 317 A.2d 68.
Because there were factual issues to determine regarding whether the Hazeltine defendants breached a duty to disclose the restriction to Aldrich, whether the Hawrylos relied on Hazeltine's advice and whether that advice was a substantial proximate cause of any damages suffered by the Hawrylos, summary judgment was improper either against or in favor of the Hazeltine defendants. The Supreme Court recently stated:
We also recognize that attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorney's representations and that the non-clients are not too remote from the attorneys to be entitled to protection.

Petrillo v. Bachenberg, 139 N.J. 472, 483-484, 655 A.2d 1354 (1995).
Therefore, the order in favor of the Hawrylos against the Hazeltine defendants is reversed and remanded for trial.
The partial summary judgment in favor of Aldrich against Commonwealth with respect to coverage under the title insurance policy is reversed and this matter is remanded (1) to have judgment entered in favor of Commonwealth dismissing this part of Aldrich's complaint against Commonwealth and (2) for further proceedings with regard to Commonwealth's alleged negligence.
The partial summary judgment entered in favor of the Hawrylos against Commonwealth with respect to coverage under the title insurance policy is reversed, and this matter is remanded to have that part of the third party complaint of the Hawrylos against Commonwealth dismissed and for further proceedings with regard to Commonwealth's alleged negligence.