137 N.J. Super. 518 (1975)
349 A.2d 574
LEO I. TOBIN AND MYRA TOBIN, PLAINTIFFS,
v.
PAPARONE CONSTRUCTION CO., A NEW JERSEY CORPORATION; LAWRENCE SHEFTER AND FRIEDA SHEFTER, HIS WIFE; ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF CHERRY HILL; AND MAYOR AND COUNCIL OF THE TOWNSHIP OF CHERRY HILL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 20, 1975.
*520 Mr. Saul Teitelman for plaintiff.
Mr. Edwin F. Saltzberg for defendant Paparone Construction Company (Mr. Lewis Katz, attorney).
Mr. Lee B. Laskin for defendant Zoning Board of Adjustment of the Township of Cherry Hill.
Mr. Richard S. Hyland for defendants, Lawrence and Frieda Shefter (Messrs. Hyland, Davis & Reberkenny, attorneys).
*521 Mr. Ralph J. Kmiec for defendant Mayor and Council of Township of Cherry Hill (Messrs. Kmiec and Palumbo, attorneys).
KING, J.S.C.
This case was initially brought in the Chancery Division but an amended count converted the complaint in part to one in lieu of prerogative writs to review the action of the township zoning board of adjustment. The entire matter was then transferred to the Law Division.
Plaintiffs Leo Tobin and his wife (Tobin) seek equitable and legal relief from defendants, each of whom they allege are responsible for the construction and presence of a tennis court on their adjacent neighbor's property. The side fence of this 106' x 50' court comes to within one foot of plaintiffs' property line. The court is surrounded by a 10'-high chain link fence.
Defendants include Paparone Construction Corporation, a large-scale, experienced developer (Paparone), Lawrence Shefter and his wife, the adjacent tennis court owners (Shefter), the Zoning Board of Adjustment of the Township of Cherry Hill (zoning board), and the Mayor and Council of the Township of Cherry Hill. The mayor and council were subsequently dropped from the suit. Defendant Shefter also crossclaims against defendant Paparone for indemnity.
On October 12, 1973 Tobin agreed in writing to buy a lot and new home for $54,000 in this affluent Cherry Hill development from defendant Paparone, the builder and developer. The agreement of sale was not recorded. Settlement on the Tobin property (1918 Country Club Drive) was concluded on March 25, 1974 and Tobin took immediate occupancy. By deed dated December 6, 1973 defendant Paparone had previously conveyed to defendants Shefter the adjoining lot and house (1916 Country Club Drive). Defendants Shefter, with defendant Paparone's encouragement and assistance, had their house constructed in a special position on the lot to allow room for the construction of a tennis court. The testimony indicates that Paparone used *522 the tennis court feature as an inducement to Shefter in order to sell him the lot and house. However, Paparone never disclosed the plans for a tennis court to Tobin during his negotiations. The conveyances made by Paparone to Tobin and to Shefter were subject to several declarations of restrictions not recited in their deeds but properly recorded in prior deeds. Both residents deny knowledge of the restrictive covenants because they were not recited in the deed and no report of title was provided at settlement. Neither buyer was represented by counsel during the negotiations for purchase or at final settlement.
On March 22, 1974, three days before Tobin settled and took possession, defendant Shefter filed a petition with the zoning board of adjustment requesting a variance to permit construction of a tennis court to within one foot of the common boundary line, and also to obtain relief from fence height requirements (six feet maximum) to permit a ten-foot fence. Defendant Paparone was served with notice of the Shefter petition for variance on March 27, 1974, two days after closing on Tobin's property. The hearing was scheduled for April 9, 1974. The Tobins were never served with any notice as they were not record owners on March 22, 1974, the date the variance application was filed. Paparone did not notify Tobin of the notice of application for variance, nor did he oppose the application for variance. The unopposed application for variance was granted by the zoning board on the hearing date of April 9, 1974. Prior to the hearing date defendant Shefter, although denying that he had knowledge of the restrictive covenants running with his land, inquired of his neighbors, with the exception of Tobin, to be certain the tennis court would not meet with their objections. The restrictive covenants forbid fences above four feet in height and structures forward of the front building line. The tennis court is lightly forward of the front of defendant Shefter's house, as well as violative of the fence height restriction. Defendant Shefter never spoke with plaintiffs regarding the *523 construction of the court, apparently because Tobin moved in just shortly before the hearing date.
During July 1974 defendant Shefter installed the tennis court and fence. Plaintiffs filed this suit on August 29, 1974, after the court was completed. No publication of the award of variance was ever made. The court rules, R. 4:69-6(f)(3), require such publication before the statute of limitations will begin to toll for actions in lieu of prerogative writs to review a determination of a grant of variance.
Pursuant to the variance conditions the tennis court is not illuminated for night play. Between the tennis court fence and Country Club Drive defendant Shefter has planted some fairly tall trees which partially shield the court from the street. Along the common boundary between Shefter and Tobin a small hedge has been started, comprised of bushes planted about one foot apart and now standing between two and three feet in height. This present side planting screen is inadequate to shield Tobin's view. The boundary line between the properties is marked by railroad ties. There is also a drainage problem at the property line which is not within the pleadings in this case.
Plaintiff alleges that the tennis court interferes with his right to the quiet enjoyment of his property and asserts that the tennis court and fence constitute a nuisance. Plaintiff asserts that defendant Paparone's failure to enforce the restrictions and failure to notify plaintiff of the application for variance was a constructive breach of their contractual relations justifying an award of money damages. Plaintiff also requests that the variance be set aside as arbitrary, capricious and violative of the restrictions, and that the tennis court be ordered removed and the fence surrounding it be taken down. Initially plaintiff Tobin demanded rescission of the transaction and return of the purchase price but this theory was abandoned at trial.
We are faced here with a decision regarding whether any of the defendants have breached their duties to the plaintiff and, if so, what remedy is appropriate. Builder-developer *524 Paparone did not fulfill his alleged duty to Tobin in several respects. As legal owner of the Tobin house and lot at 1918 Country Club Drive until March 25, 1974, Paparone had an obligation to enforce the restrictive covenants uniformly imposed on all lots in the development. Paparone as constructive trustee also had at the very least a duty to pass on notice of the variance hearing to Tobin.[1] This is supported by the court's holding in Amster v. Tenney, 139 N.J. Eq. 335 (Ch. 1947), finding that from the inception of a contract of sale the vendor is considered to be a trustee of the land for the purchaser who becomes the equitable owner at that time.
The testimony indicates Paparone was aware of and even encouraged Shefter in his plans to construct the tennis court. Shefter testified that the principal motivation for his purchase of this larger corner lot was his desire to construct a tennis court. Having sold the one corner lot to Shefter, Paparone sold the adjoining lot to Tobin without ever mentioning the planned tennis court. No other private tennis courts are present in this area of Cherry Hill. The uniqueness of this situation put Paparone on notice that existence of a tennis court on Shefter's property would affect future adjacent neighbors and might be offensive to many of them. This would be especially important to one considering purchase of the adjoining lot, the property most likely to be adversely affected by the presence of a tennis court. Yet Paparone led Shefter to believe there would be no problem at all, while Tobin was not even advised of the proposed court and application for variance.
Although a vendor may be under no obligation to speak concerning the thing he would sell, yet if he undertakes to do so he is bound not only to speak the truth in all he says but is equally obliged *525 to tell every material fact within his knowledge which might materially qualify such statements as he may have made. [Macco Const. Co. v. Fickert, 76 Cal. App.2d 295, 172 P.2d 951, 954 (D. Ct. App. 1946)]
Here Paparone, by his words and by the existing character of his high-priced development, had created the impression of an affluent, quiet, spacious community. Tobin could not possibly have discovered the proposed plan for the tennis court himself prior to settlement. Its existence was contrary to the impression of a quiet community generated by the developer.
Bethlahmy v. Bechtel, 91 Idaho 55, 415 P.2d 698 (Sup. Ct. 1966), is an example of a purchaser dealing with an experienced developer. The seller similarly represented the houses in the tract as the finest and of first quality. The developer failed to inform the buyer of an underground water conduit it installed beneath the house necessitated by the backfilling of an old irrigation ditch. After sale and occupancy, seepage into the new home developed. Efforts by the developer to rectify the problem failed. The Supreme Court of Idaho found in favor of purchaser's action for rescission and damages. The court found that the presence of the unsealed irrigation ditch through the lot and beneath the garage, coupled with the absence of adequate waterproofing of the basement, constituted major defects known to defendant, unknown to plaintiffs and not reasonably discovered on inspection supported a finding of fraud. The Idaho court reviewed recent judicial trends imposing accountability on developers in sales to new home buyers, including the landmark New Jersey decision of Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965). In ruling in favor of a cause of action against the developer the court stated:
The old rule of caveat emptor does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is *526 daily engaged in the business of building and selling houses, is manifestly a denial of justice. [415 P.2d at 710]
Tobin properly relied on Paparone's representations as to the character of the surrounding neighborhood. Paparone's silence created a mistaken impression on the part of the purchaser which operated to induce the purchaser to buy. This silence was a fraudulent respesentation and a failure of an implicit condition of sale. E.g., Waters v. Hartnell, 5 Conn. Cir. 687, 260 A.2d 615 (Cir. Ct. 1969) (fraudulent representation of subsurface water condition); Finefrock v. Carney, 263 P.2d 744 (Sup. Ct. Okl. 1953) (false representations as to character of construction); Clauser v. Taylor, 44 Cal. App.2d 453, 112 P.2d 661 (D. Ct. App. 1941) (misrepresentations of soil conditions); Lake v. Thompson, 366 Pa. 352, 77 A.2d 364 (Sup. Ct. 1951) (inaccurate representation of mechanical systems).
A result favorable to the plaintiff purchaser here is consistent with the most recent expression of our Supreme Court in Weintraub v. Krobatsch, 64 N.J. 445 (1974). In this case Justice Jacobs permitted a vendee to assert as a grounds for rescission of an agreement of sale the vendor's deliberate concealment or failure to disclose roach infestation although no responsibility was assumed by the vendor as to such conditions of the premises in the written agreement. The Supreme Court's language is helpful in giving direction to a trial court confronted with a novel claim advanced by an innocent purchaser against an experienced developer.
Our courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there. See Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965); Reste Realty Corporation v. Cooper, 53 N.J. 444 (1969); cf. Marini v. Ireland, 56 N.J. 130 (1970); Totten v. Gruzen, et al., 52 N.J. 502 (1968). In Schipper we elevated the duties of the builder-vendor in the sale of its homes and in the course of our opinion we repeatedly stressed that our law should be based on current notions of what is "right and just". [64 N.J. at 456].
*527 In the recent case of Timber Ridge v. Dietz, 133 N.J. Super. 577 (1975), this court held that where a lessor expressly represents that a premium price is being paid for a high-quality rental property he must furnish premises which meet more than the minimal standards of habitability. In the present case Paparone certainly represented to Tobin that his purchase price included the expectancy of ambient surroundings with his new home. Due to Paparone's conduct Tobin did not learn of the proposed tennis court until after he had moved into his new home, the variance had been granted, and Shefter was actually discussing construction plans with the contractor.
Shefter in turn cannot be criticized for his actions. He had no knowledge of the restrictive covenants until the tennis court was completed and suit was filed. Shefter properly obtained the appropriate variance allowing construction up to within one foot of his side property line and the building of a ten-foot-high fence. Shefter himself in no way contributed to the frustration of Tobin's expectations.
Plaintiff Tobin does contend that the zoning board had no authority to grant the variance because use of the property was already limited by restrictive covenants more onerous than the zoning ordinance. This position is incorrect. 3 Rathkopf, The Law of Zoning and Planning (3 Ed. 1972), 74-1 states:
The validity of a zoning ordinance, the right to use of property in accordance with its restrictions, the right to relief therefrom through grant of a variance and the right to a special exception use provided for therein should be considered independently of the existence of restrictions upon the land involved arising out of covenants in deeds or restrictions imposed therein or through agreements between private parties.
The zoning ordinance constitutes the regulation of land use through the exercise of the police power in accordance with comprehensive plan for the entire community. It is entirely divorced in concept, creation, enforcement and administration from restrictions arising out of agreement between private parties who may, in the exercise of their constitutional right of freedom of contract, impose whatever restrictions upon the use of their lands that they desire, such covenants being enforceable only by those in whose favor they run.
*528 A zoning ordinance restriction which permits less restrictive uses than those to which property is limited by a covenant in a deed or private agreement is usually held not to impair the efficacy of the latter.
This question customarily arises upon a suit, by a person in whose favor a covenant is claimed to run, to enjoin the covenantor (or a subsequent grantee who has taken subject to the restriction) from using his premises for a purpose prohibited by the private covenant although permitted by the zoning ordinance.
The rights and obligations of parties to private covenants are to be determined in appropriate actions to enforce or to be relieved of the burden of, such covenants; they are not to be determined by reference to the zoning restrictions applicable to the land although the effect of the zoning restriction in its operation upon the surrounding area may be considered.
The zoning restrictions imposed upon a property owner's land are the measure of his obligations to the community; the private covenant is merely an indication of the measure of his obligation to a private party, which may or may not be enforceable but which cannot, in either event, affect the necessity of conforming to the comprehensive plan set forth in the ordinance.
The question has also arisen in cases in which the municipality is sought to be enjoined from enforcing a stricter classification of plaintiff's land than those imposed by the restrictive covenants. The same rule applies, requiring conformity in such case to the ordinance, the burden of which obviously cannot be relieved by the existence of a private covenant.
It is the duty of an administrative officer charged with the issuance of permits to administer his duties in accordance with the provisions of the zoning ordinance. Consequently, if an application for a permit shows compliance with the requirements of the zoning ordinance and other applicable ordinances, he may not predicate his denial of the permit upon the existence of more restrictive provisions in a deed or covenant.
Nor is it proper for an administrative body to consider the existence of a private covenant upon an application for a variance or a special exception, the only applicable requirements for these being those set forth in the enabling act or ordinance.
Shefter had a right to pursue the zoning variance irrespective of the restrictive covenants running with the land. Assuming the prerogative writ aspect was within time because of the lack of publication, this court finds that the zoning board acted properly and within its powers when it granted the accessory use and bulk variance. Our review power over zoning board action is limited. We do not find their action to *529 have been arbitrary or capricious, and the grant of variance is affirmed. However, it is easy to conceive that the zoning board might well have reached a different result if Tobin had had the opportunity to appear and protest the application.
In Bruno v. Hanna, 63 N.J. Super. 282 (App. Div. 1960), New Jersey's general rule on restrictive covenants was stated as follows:
Restrictions on the use to which land may be put are not favored in law because they impair alienability. They are always to be strictly construed, and the courts will not aid one person to restrict another in the use of his land unless the right to restrict is made manifest and clear in the restrictive covenant. * * * Of course the rule of strict construction will not be applied to defeat the obvious purpose of a restriction. [at 285, 287]
The restrictions in the pertinent covenants as to fence height and intrusion beyond front setback are quite clear and presumptively enforceable. Due to the negligence of Paparone the property owners were unaware of the existence of the covenants until the tennis court was actually constructed.
The court finds that Tobin has a cause of action against Paparone. Tobin was damaged in his reasonable contractual expectations by Paparone's conduct in (1) encouraging Shefter in his desire to acquire a property particularly suitable for the installation of a tennis court, (2) failing to reveal Shefter's plans for the tennis court to Tobin, (3) failing to provide copies of the deed restrictions to either property owner at settlement and failing itself to enforce the covenants, and (4) failing to furnish Tobin with the notice of the application for variance which Paparone received two days after Tobin's settlement. We find no wrongdoing or inequitable conduct on Shefter's part and find that Tobin has no cause for action against him, either equitable or legal.
The question of remedy now arises. Tobin's prayer for rescission of the contract of sale has been abandoned. Equity cannot here require the removal of the tennis court. Shefter's conduct was wholly conscientious and he now has *530 $16,000 invested in the tennis court. Upon inspection of the property, with the parties' permission, the court feels that an award of money damages in favor of Tobin and against Paparone is a suitable and adequate remedy. There was expert testimony at trial indicating that the existence of the tennis court imposes a degree of economic obsolescence upon Tobin's property. This damage, related in terms of diminution in appeal for future resale, could be partially corrected by improved landscaping and screening along the property line. Plaintiff's expert real estate appraiser and developer estimated the diminution in value of the Tobin property after appropriate screening and landscaping is accomplished to be approximately $1500. The evidence by plaintiff's same expert convinced the court that a row of private trees six to eight feet in height in combination with the landscaping could be planted along the 106-foot length of the fence running parallel to the common boundary. These plantings would probably effectively block Tobin's view of the fence in about two years and also serve to deaden the sound of the balls. The maximum costs of these plantings was estimated by plaintiff's expert to be $3500. This court is not requiring any particular planting by the plaintiff but is using the testimony to establish the measure of damages to be awarded. The court's inspection of the premises reveals clearly that this remedial planting, if undertaken by plaintiff, would be mostly upon plaintiff's property. Tobin's house sits about 60 feet from the boundary line. The court finds that there is adequate room on the Tobin property for establishing this remedial planting without any significant sacrifice on Tobin's part. If the landscaping is undertaken as recommended by plaintiff's expert, Tobin should find the quiet enjoyment of his property much enhanced and the ultimate diminution in value slight. Tobin is awarded damages of $5000 against Paparone, the sum of the cost of the planting and the residual loss of value. All other actions and crossclaims are dismissed. Plaintiff's judgment is to include all taxable costs. *531 Shefter is ordered to cooperate with any remedial planting to be undertaken by Tobin insofar as such undertaking may require entry upon or use of the Shefter property.
NOTES
[1] Plaintiff Tobin has protested that Paparone was obligated to oppose the zoning variance on his behalf. However, we find that legal title having passed to Tobin before the variance hearing date, Paparone was only required to notify him of the hearing.