**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3968-14T1
                      A-0012-15T1

VICTOR H. BOYAJIAN and
LYNN BOYAJIAN,

     Plaintiffs-Appellants/
     Cross-Respondents,

v.

MICHAEL CAMMARATA and
GRETEL CAMMARATA,

     Defendants-Respondents/
     Cross-Appellants.

_____

VICTOR H. BOYAJIAN and
LYNN BOYAJIAN,

     Plaintiffs-Appellants/
     Cross-Respondents,

v.

MICHAEL CAMMARATA, and
GRETEL CAMMARATA,

     Defendants-Respondents/
     Cross-Appellants,

and

TOWNSHIP OF HARDING; PAUL
FOX, Township Engineer of

Harding Township; GAIL McKANE,
Administrator of Harding
Township; and KAREN ZABORSKY,
Zoning Officer of Harding
Township,

    Defendants.

_____

Argued April 4, 2017 — Decided August 17, 2017

Before Judges Reisner, Koblitz and Sumners.

On appeal from the Superior Court of New
Jersey, Law Division, Special Civil Part,
Morris County, Docket No. DC-4957-14 and
Chancery Division, General Equity Part, Morris
County, Docket Nos. C-119-13 and
C-171-14.

Lance J. Kalik argued the cause for
appellants/cross-respondents (Riker Danzig
Scherer Hyland & Perretti LLP, attorneys; Mr.
Kalik, of counsel and on the briefs; Tracey
K. Wishert and Jeffrey A. Beer, Jr., on the
briefs).

Bruce H. Snyder argued the cause for
respondents/cross-appellants (Lasser Hochman,
LLC, attorneys; Mr. Snyder on the brief).

PER CURIAM

    These two consolidated appeals arise from disputes between neighbors over landscaping, fencing, and a common driveway. For the reasons that follow, we affirm the trial court orders on both plaintiffs' appeals and defendants' cross-appeals.

A-3968-14T1

The parties own adjoining lots in New Vernon, one located behind the other. Plaintiffs Victor H. Boyajian and Lynn Boyajian own the rear lot (Block 17, Lot 22), which is landlocked except for the driveway, which provides them with access to a public road pursuant to an easement. Defendants Michael Cammarata and Gretel Cammarata, own the lot in front of the Boyajian's property (Block 17, Lot 20); the easement runs along the western edge of defendants' lot.[1] Defendants also use the driveway to reach the public road.

The recorded easement, which was created in a 1948 deed and restated in a 1981 deed, is limited by its terms to the right to use the "road" or driveway. The easement reserved to the sellers of Lot 20 and their "heirs and assigns" the following: "the right and privilege to use the road now on the premises hereby conveyed for the purpose of ingress and egress to and from the premises retained by them [Lot 22]."

The easement has never been the subject of a metes and bounds description. However, a 2011 agreement between the parties

---

[1] It appears from the record that at some point along its length, the driveway encroaches very slightly onto the property of a third set of neighbors, the Dudleys. The encroachment may have existed for decades. There is no evidence in this record that the Dudleys have ever objected to the encroachment, and they were not parties to any of this litigation.

A-3968-14T1

described it as follows: "there presently exists an easement in favor of Boyajian over an existing driveway that varies in width from approximately 17 feet at its widest point to approximately 8 feet at its narrowest point . . . ." [emphasis added]. The 2011 agreement was a settlement, resulting in plaintiffs withdrawing their objection to defendants' variance application for the construction of a larger house on their property. In addition to identifying the driveway easement and its purpose, the 2011 agreement provided that the parties would share the cost of maintaining the driveway. The agreement specifically contemplated that damage might occur to the driveway during construction of defendants' new house, and defendants agreed to pay to repair any such damage.

The 2011 agreement also provided that defendants would plant and maintain "landscaping" along the boundary line between the two properties, according to the terms set forth in the approved plans defendants had submitted to the Harding Township Zoning Board of Adjustment (zoning board or board) with their variance application. A copy of the relevant page of the plans was attached to the agreement.[2] As the board's resolution recognized, the

---

[2] The attached page contains a detailed drawing of the property, including the driveway, as well as the location and description of the proposed landscaping.

plantings were a buffer, intended to shield defendants' large house from view and maintain plaintiffs' bucolic woodland vista toward defendants' rear property line. The board included the plantings as a condition to the variance approval.

After defendants' house was built, they began constructing a fence along the driveway, at a point about two feet from the edge of the driveway on defendants' property. Thus, they left about two feet of open space along one side of the driveway. There is no fence along the other side of the driveway. Defendants claimed they needed to build the fence because plaintiffs and their guests drove up and down the driveway at high speeds and defendants feared for their children's safety.

Plaintiffs contended that constructing the fence interfered with their access easement. They also argued that it violated the implicit terms of the 2011 agreement which, they claimed, precluded construction of a fence, although by its terms the agreement was silent on the subject. Plaintiffs also believed that defendants planned to build a fence along the back lot line, which would have denied plaintiffs the bucolic wooded view that the settlement was intended to preserve.[3]

---

[3] Defendants never built a fence along the back of their lot and consistently denied having any plans to do so. They repeated that commitment at the oral argument of this appeal.

On September 8, 2013, plaintiffs filed an action in General Equity seeking to enjoin construction of the fence, claiming that defendants needed a zoning permit to build it and that the construction violated the 2011 maintenance agreement. Their complaint also asserted that defendants had damaged the driveway during the house construction and failed to make repairs, and that defendants failed to install and maintain the landscape buffer. Defendants and plaintiffs resolved the preliminary injunction application when defendants agreed to apply for a zoning permit; Judge Stephen C. Hansbury entered a consent order reflecting that agreement.

Judge Hansbury addressed plaintiffs' remaining claims in an order dated May 23, 2014.[4] Construing the 2011 settlement agreement, he found no legal or factual basis for plaintiffs' claim that defendants agreed not to build a fence along the driveway, on their own property. Rather, he held that plaintiffs had a right to build the fence, so long as the zoning board permitted them to do so.

---

[4] Judge Hansbury concluded that, in light of the age of the case and the impending July 2, 2014 trial date, plaintiffs' motion to amend the complaint was untimely. In the proposed amended complaint, plaintiffs sought, among other things, permission to demolish and rebuild the existing driveway to specifications they claimed were required by the current zoning code.

Interpreting the "plantings" section of the 2011 agreement, Judge Hansbury reasoned that defendants had agreed to comply with the terms of their variance application as it pertained to the types of trees and shrubs to be planted and maintained. He therefore directed that plaintiffs submit their landscape-related claims in the first instance to the zoning board for a determination as to whether defendants had complied with that condition of the variance. He also noted that, in responding to the complaint, defendants had admitted that some of the plantings had died and had agreed to replace them. The judge reasoned that any dispute over exactly what needed to be planted or replaced should be decided by the zoning board, because the settlement agreement essentially incorporated the variance conditions about landscaping.

Finally, Judge Hansbury concluded that the claim for needed repairs to the driveway could be remedied through money damages, that it involved at most less than $10,000, and that the claim should be transferred to the Special Civil Part for trial.

As they had agreed, defendants applied for and obtained a permit from the local zoning officer to build the fence. Plaintiffs then filed an appeal with the zoning board in June 2014, challenging the decision of the zoning officer. They argued that the board's prior resolution, granting defendants a variance

to construct their house, required that defendants obtain the board's approval to construct the fence. They also argued that a municipal ordinance required that all driveways be at least twelve feet wide with two-foot shoulders. Thus, they contended that their easement should be considered to be sixteen feet wide along its entire length and that the fence would encroach on their easement.

The zoning board held four days of hearings on plaintiffs' appeal, during which the parties presented engineering experts and other testimony. In a February 19, 2015 resolution, the board rejected plaintiffs' argument that the prior zoning approval required defendants to obtain permission to build the fence. The board also construed the municipal ordinance as applying only to newly constructed driveways.

The board resolution specifically "reject[ed] the interpretation of the Ordinance requested by [plaintiffs] as including a 16-foot 'clearance area' requirement in connection with all driveways that would have been violated by the zoning permit issued by the Zoning Officer . . . ." In April 2015, plaintiffs filed an action in lieu of prerogative writs in the Law Division. On February 1, 2016, Judge Stuart Minkowitz agreed with the board that the ordinance only applied to newly built driveways

and did not apply to the long-existing driveway that was the subject of the easement.[5]

Meanwhile, plaintiffs' claim for damage to the driveway proceeded in the Special Civil Part, culminating in a bench trial that lasted three days and featured expert testimony as to the scope of the driveway easement and the need for repairs. On March 17, 2015, Judge Stephen J. Taylor issued a comprehensive written opinion addressing, among other things, plaintiffs' claims about the width of the driveway which was the subject of the easement. Before Judge Taylor, plaintiffs did not claim that the easement should be sixteen feet wide, with a twelve-foot roadbed. Instead, they argued that the driveway was historically ten feet wide. They claimed that defendants heavily damaged the driveway during construction and removed some of the paving to make it narrower, and that defendants should pay $25,000 to tear out and replace the entire driveway.

Defendants argued that they should pay nothing because, they asserted, the driveway was in heavily damaged condition before they began constructing their house, their construction contractor did little or no additional damage, and they did not narrow the

---

[5] Judge Minkowitz's order is not part of this appeal.

driveway. They also presented expert testimony concerning the width of the driveway before and after the construction.

Judge Taylor did not find either side's witnesses entirely credible. He determined, as a matter of fact, that the driveway had always varied in width over its length, from about eight feet across to about seventeen feet at the end where it intersected the public road. He found that at one very small portion, there appeared a "slight alteration in the width of the driveway" where some of the paving had been removed. However, he found that the narrowing was de minimus and did not warrant replacing the entire driveway or the payment of any compensatory damages:

> The clearly stated purpose of the access easement was to allow for ingress and egress to and from the rear property along the existing road.
>
> There was no testimony presented that the slight narrowing of the driveway in an area near Defendants' new home impacted the ability of the Boyajians to gain access to their property. The slight change in dimensions does not impact the purpose [of the] easement or the purpose of the [2011] contract in any important or meaningful way. Certainly, the slight change does not require replacement of the entire driveway. Accordingly, the breach of the Maintenance Agreement was a minor one that did not affect the purpose of the Agreement in a meaningful way. Therefore, the Plaintiffs are not entitled to any compensatory damages for the slight narrowing of the driveway.

Judge Taylor rejected the testimony of plaintiffs' expert that the driveway had to be torn out and replaced, and concluded that repaving would suffice. Based on testimony from plaintiff's expert as to the relative costs of repaving versus replacement, Judge Taylor calculated the repaving costs at $10,000 and ordered defendants to pay that amount.

Meanwhile, plaintiffs filed yet another piece of litigation on December 12, 2014 — a General Equity complaint (Docket No. C-171-14), seeking to "quiet title" to the easement and contending that the fence constituted a nuisance that was interfering with quiet enjoyment of their property. Mirroring their claim before the zoning board, plaintiffs asserted that they had an easement for "access and safety" which required a twelve-foot roadbed with two-foot shoulders on either side, allegedly to allow emergency vehicles to reach their house if needed. Based on that premise, they claimed that the fence was encroaching on their easement. They also asked the court to let them install new asphalt on the easement to a width of at least twelve feet, and to provide for shoulders of at least two feet on each side of the pavement. On June 26, 2015, Judge Hansbury granted defendants' motion for summary judgment based on issue preclusion. However, he denied defendants' application for sanctions, finding that plaintiffs' complaint was not frivolous or filed for the purpose of harassment.

A-3968-14T1

Before us, plaintiffs appeal from Judge Hansbury's May 23, 2014 order granting defendants' motion for summary judgment; Judge Taylor's March 17, 2015 order awarding plaintiffs only the cost to repave the driveway; and Judge Hansbury's June 26, 2015 order granting defendants' motion for summary judgment. Defendants cross-appeal from the portion of Judge Taylor's March 17, 2015 order awarding plaintiffs $10,000 to repave the driveway; and the provision of Judge Hansbury's June 26, 2015 order denying their application for sanctions.

Our review of a trial court's summary judgment order is de novo. See Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). We will not disturb a trial judge's factual findings made after a bench trial, so long as the findings are supported by substantial credible evidence. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). However, our review of a trial court's legal interpretations, including the interpretation of an easement or a contract, is de novo. Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013); Yellen v. Kassin, 416 N.J. Super. 113, 119 (App. Div. 2010). We review a trial court's decision to grant or deny sanctions for abuse of discretion. Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407 (App. Div.), certif. denied, 200 N.J. 502 (2009).

Having reviewed the record in light of the applicable standards of review, we find that Judge Taylor's findings of fact are supported by substantial credible evidence. Rova Farms, supra, 65 N.J. at 483-84. We find no basis to disturb Judge Taylor's well-explained evaluation of witness credibility, and based on the facts as the judge found them, his determinations as to damages are unassailable. Accordingly, we affirm the order of March 17, 2015 for the reasons set forth in Judge Taylor's written opinion. The parties' respective arguments as to that order are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

We likewise find no reason to disturb Judge Hansbury's May 2014 order. We agree with him that the 2011 agreement, by its terms, does not preclude defendants from building a fence along the driveway. We have seen pictures of the fence. It is located at least a couple of feet away from the driveway and does not block access to plaintiffs' property. While the construction of a fence along the back of defendants' property might defeat the purpose of the landscaping portion of the agreement, and perhaps the variance conditions as well, defendants have not built such a fence and eschew any intention to do so. Consequently, there is no live issue as to a rear-yard fence.

A-3968-14T1

We likewise find no error in Judge Hansbury's decision that the dispute over the landscaping should be submitted to the zoning board, thus giving the board the first opportunity to construe the conditions it imposed on the variance. That decision is consistent with the well-established doctrines of exhaustion of administrative remedies and primary jurisdiction, and is especially appropriate here. See Curzi v. Raub, 415 N.J. Super. 1, 20-21 (App. Div. 2010); Bor. of Haledon v. Bor. of N. Haledon, 358 N.J. Super. 289, 301-02 (App. Div. 2003). The 2011 agreement incorporates by reference the landscaping plan in the variance application. In turn, the landscaping plan approved by the board lists certain types of trees to be planted but gives defendants discretion to make substitutions. Plaintiffs appear poised to contest the species and condition of every single tree defendants planted. The zoning board's expertise in landscaping concepts will be particularly helpful in resolving those issues.

We add the following comment. In addition to their rights under the variance conditions, plaintiffs have contractual rights under the settlement agreement. See Tobin v. Paparone Constr. Co., 137 N.J. Super. 518, 528-30 (Law Div. 1975). Therefore, if the board declines to entertain plaintiffs' complaint about the landscaping - or if the board orders defendants to replace dead trees or install substitute types of plantings, and if defendants

14                                                      A-3968-14T1

fail to comply - plaintiffs may return to court to seek relief pursuant to the settlement agreement.[6] We do not construe the May 23, 2014 order as precluding further litigation under those limited circumstances.

We find no abuse of Judge Hansbury's discretion in transferring the dispute over the driveway repairs to the Special Civil Part, which provided the parties with a full and fair opportunity to litigate all issues pertinent to the width and condition of the driveway. Nor do we find any abuse of discretion in his decision to deny sanctions for the filing of the second General Equity complaint. Ferolito, supra, 408 N.J. Super. at 407.

Finally, we address Judge Hansbury's decision that plaintiffs' December 2014 complaint was barred by doctrines of claim preclusion. Judge Hansbury concluded that plaintiffs' claim - that they had a right to a sixteen-foot easement, based on a municipal ordinance governing driveways - had been litigated before the zoning board, which rejected the claim. We agree. Moreover, plaintiffs have now litigated the issue before Judge

---

[6] In light of defendants' professed willingness to replace plantings that have died, as set forth in their submissions before Judge Hansbury, perhaps the parties will be able to resolve the landscaping issues.

Minkowitz, who confirmed that the municipal ordinance only applies to newly-constructed driveways.

We also conclude that plaintiffs' claim is barred by the entire controversy doctrine. See R. 4:30A; McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 394-95 (2003), cert. denied, 540 U.S. 1107, 124 S. Ct. 1068, 157 L. Ed. 2d 893 (2004). However plaintiffs choose to characterize and re-characterize their claim, its essence is that defendants have no right to build or maintain the fence along the driveway. Plaintiffs already litigated their claim against construction of the fence, in the action they filed before Judge Hansbury in 2013. He granted summary judgment, finding that defendants had the right to build the fence so long as they obtained a zoning permit. After defendants obtained the permit, plaintiffs litigated their campaign against the fence on another theory before the zoning board and before Judge Minkowitz. Their "quiet title" action, filed before Judge Hansbury in December 2014, asserted yet another legal theory (the "safety" easement) in support of the same relief against the same parties.

Moreover, in the damages action before Judge Taylor, plaintiffs exhaustively litigated their claim about the alleged width of the driveway, because it was central to their contentions that defendants had damaged their access easement by removing some of the pavement and that the court must order defendants to

A-3968-14T1

completely rebuild the driveway. Plaintiffs could have, but did not, raise any claim that the driveway was, or needed to be, uniformly twelve feet wide in order to satisfy their access needs and therefore should be rebuilt to those specifications. In fact, they argued that the driveway had always been uniformly ten feet wide and raised no claim that such width was insufficient for their access needs.

Judge Taylor found that in the 2011 agreement, the parties had agreed on the dimensions of the driveway and were bound by that contract. He also found as fact that, both before and after defendants' construction project, the driveway varied between eight and seventeen feet wide at various points along its length, and that its width was sufficient to serve plaintiffs' access needs. Plaintiffs were not entitled to litigate those issues yet again before Judge Hansbury, by asserting a new theory that they were entitled to an access "and safety" easement.

Lastly, even if Judge Hansbury had addressed the issue, it is plain from the wording of the 1948 and 1981 deeds that the plaintiffs' easement is limited to the use of the existing driveway. See Borough of Wildwood Crest v. Smith, 210 N.J. Super. 127, 142 (App. Div.) ("the extent of an easement created by a conveyance is fixed by the conveyance"), certif. denied, 107 N.J. 51 (1986). "[W]hen the intent of the parties is evident from an

examination of the instrument, and the language is unambiguous, the terms of the instrument govern." Rosen v. Keeler, 411 N.J. Super. 439, 451 (App. Div. 2010) (citation omitted). In their 2011 agreement, the parties agreed that the width of the driveway varied from eight feet to seventeen feet, and Judge Taylor found that the description was accurate. Plaintiffs are not entitled to expand the easement to a uniform twelve feet of paved surface with four feet of shoulder.

To the extent not specifically addressed herein, the parties' respective additional appellate arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION